690 P.2d 1035

**Ed WAKSMAN, d/b/a Posh Eddie's Booze and Bagel, Smith's Food King of New Mexico, Inc., and Chi-Chi's of New Mexico, Inc., Individually and as Representatives and Retailer Liquor License Holders, et al., Plaintiffs-Appellees, Cross-Appellants,**

v.

**CITY OF ALBUQUERQUE, Defendant-Appellant, Cross-Appellee.**

**No. 14923.**

Supreme Court of New Mexico.

Nov. 20, 1984.

Stephen F. Lawless, Richard V. Earl, McCulloch, Grisham & Lawless, P.A., Albuquerque, for plaintiffs-appellees, cross-appellants.

Malcolm W. deVesty, Asst. City Atty., Albuquerque, for defendant-appellant, cross-appellee.

## OPINION

WALTERS, Justice.

The trial court granted a summary judgment to plaintiffs in their class action suit for refund, to each member of the class, of city liquor license taxes in excess of $1,000 for the 1981–82 tax year. It denied plaintiffs' request for prejudgment interest. The City appeals the refund judgment; plaintiffs appeal the denial of interest. We affirm.

## I.

In May, 1980, the Albuquerque City Council passed an ordinance, effective July 1, 1980, imposing a liquor license tax of $3700 per year on persons holding dispensers' licenses, and $1500 per year on those with retailers' licenses. In January, 1981, the state legislature amended NMSA 1978, Section 7–24–1, to provide, in pertinent part:

> Municipalities * * * may, by duly adopted ordinance, impose an annual, nonprohibitive municipal license tax upon the privilege of persons holding state licenses under the provisions of the Liquor Control Act * * *. The amount of such license tax, which shall not exceed one thousand dollars ($1,000), and the dates and manner of payment thereof shall be fixed on or before June 1 of each year by the ordinance imposing the same.

The effective date of this amendment, which limited the amount of the tax which could be imposed, was set at July 1, 1981.

In response to the legislative limitation established in Section 7–24–1, the City amended its 1980 ordinance on May 26, 1981, by adding Subsection D:

> D. Effective Date of Tax. The effective date of this tax shall be July 1, 1980 and shall continue through June 30, 1982. Effective July 1, 1982, the license tax shall be (one thousand) $1,000 per year on all State issued licenses per authority of Laws 1981, Chapter 39, Section 124. If by ultimate judicial decision it is determined that the limitation on license taxes imposed by Section 124, Laws, 1981, Chapter 39, must be implemented before July 1, 1982, the license tax for such period shall be $1,000 per year for such licenses as authorized by the Section.

The City argues that since its amended ordinance was adopted prior to June 1, 1981, as required by the statute, and since the legislative limitation did not become effective until July 1, 1981, the statute could not have controlled the City's taxing ordinance adopted earlier than either June 19 (90 days after adjournment of the 1981 legislature) or July 1, 1981.

 The City of Albuquerque is a home rule municipality. *City of Albuquerque v. Chavez*, 91 N.M. 559, 577 P.2d 457 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978). A municipality which has adopted a city charter "may exercise all legislative powers and perform all functions not expressly denied by general law or charter." N.M. Const. art. X, § 6(D). We have interpreted this language to mean that a "home rule" municipality in New Mexico need look to legislative enactments not for a grant of power to act, but only for express limitations on that power. *Apodaca v. Wilson*, 86 N.M. 516, 525 P.2d 876 (1974).

Nevertheless, both our constitution and statutes specifically restrict the taxing power of a municipality: "No tax imposed by the governing body of a charter municipality, except a tax authorized by general law, shall become effective until approved by a majority vote in the charter municipality." N.M. Const. art. X, § 6(D). NMSA

1978, Section 3–18–2 (Cum.Supp.1984) (which in relevant part is identical to the statute that was in force in 1981), denies a municipality the right to impose an excise tax on any incident relating to liquor unless otherwise provided by law. Section 7–24–1, quoted above, does (and its predecessor did) provide the authority for imposition of the City's liquor tax; at the same time, however, the amended statute limits the amount that may be assessed.

■ While the general purpose of statutory construction is to give effect to legislative intent,

[t]he rule is well established that where the statute directs in definite terms the manner in which municipal acts are to be exercised, such statutory method must be substantially followed. *Fancher v. Board of County Com.*, 28 N.M. 179, 210 P. 237; *Bibo v. Town of Cubero Land Grant*, 65 N.M. 103, 332 P.2d 1020; McQuillin, Municipal Corporations, 3d ed., Vol. 2, § 10.27, p. 640. Also, the direction of definite and certain method of procedure in the grant of power to the municipality excludes all other methods by implication of law. McQuillin, § 10.-27, supra. Moreover, the statute making the grant of power to the municipality must be strictly construed, and the municipality must keep closely within its limits. 38 Am.Jur., § 385, p. 74.

*City of Clovis v. Crain*, 68 N.M. 10, 13, 357 P.2d 667, 669 (1960). A municipality lacks the power to alter, by ordinance, a legislatively-mandated tax limitation. *Cf. City of Albuquerque v. Cauwels & Davis, Management Co.*, 96 N.M. 494, 632 P.2d 729 (1981) (municipality not empowered to change tax collection method established by legislature).

■ Unless a contrary intent is clear, courts will read and give effect to statutes as written, attributing to the words their plain meaning. *Board of County Commissioners v. City of Las Vegas*, 95 N.M. 387, 622 P.2d 695 (1980); *State v. Elliot*, 89 N.M. 756, 557 P.2d 1105 (1977). The City argues that the statute in question is unambiguous, and we agree. The legislative

amendment imposed a $1,000 tax limit per license, and the amendment was made effective as of July 1, 1981. The rules of strict construction of taxing statutes and of following plain meaning and clear legislative intent dictate that we enforce the $1,000 limit and its effective date. The City's attempt to rush through an ordinance amendment in expectation that it would avoid a state statute having a later effective date is simply a misapprehension of the taxing powers of the City. It has no such power aside from state legislation. Ergo, the municipality must comply with the authorizing legislation or it forfeits the granted power to tax. *See City of Clovis v. Crain.*

It is evident to us that the City knew the shakiness of the May 1981 amendment to the ordinance, because it provided therein that the $1,000 tax would apply for 1981–82 if it were determined "by ultimate judicial decision" that the 1981 statutory limitation had to be implemented before the following 1982–83 year. It is difficult to conceive of clearer statutory language than that found in 1981 N.M. Laws, ch. 39, § 130, making July 1, 1981, the effective date of Section 7–24–1, and thereby making July 1, 1981, the effective date of the $1,000 limitation.

"One of the reasons for strict construction when taxing authority is delegated is that taxpayers should not be subjected to the burden of taxation without clear warrant of law." *Cauwels & Davis*, 96 N.M. 494 at 496, 632 P.2d 729 at 731 (citations omitted). The City was without authority to impose or collect any liquor license tax over $1,000 after July 1, 1981. The trial court correctly held that plaintiffs are entitled to a refund of excess liquor taxes paid.

■ Plaintiffs have argued also that principles of either res judicata or collateral estoppel apply because of an earlier separate district court decision on this issue between the City and a taxpayer *not* a party to the present action. The application of those doctrines is inappropriate here, where the mutual requirement of party identity or privity is lacking. *See Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d

1277 (1978). Collateral estoppel "is not intended to tie the hands of judges nor to * * [force] one judge to accept the conclusions of pure law made by another without benefit of appeal to this Court." *Id.* at 68, 582 P.2d 1277, 582 P.2d at 1281. Reliance on either doctrine, however, is unnecessary in view of our disposition of this matter on the statutory basis.

Plaintiffs recognize that under current and earlier versions of NMSA 1978, Section 56–8–4 (Cum.Supp.1984), the award of prejudgment interest is a question of law solely within the sound discretion of the trial court. *Navajo Tribe v. Bank of New Mexico*, 700 F.2d 1285 (10th Cir.1983). Such interest is not a matter of right under this section. *Trujillo v. Beaty Electric Co.*, 91 N.M. 533, 577 P.2d 431 (Ct.App. 1978). We are unable to say there was a clear abuse of discretion here.

For the foregoing reasons, we affirm the trial court's award of summary judgment, which gives effect to the severability and savings provisions of the amendment to the ordinance. In other words, our affirmance triggers the savings clause, which operates to impose a liquor license tax of $1,000 upon affected taxpayers as of July 1, 1981, and to mandate refunds of their excess payments.

Plaintiffs are awarded all appropriate trial and appeal costs, and interest from the date of entry of judgment below.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.