904 P.2d 57

**Ruben M. COLLADO, Claimant–Appellant,**

v.

**CITY OF ALBUQUERQUE, Employer/Insurer–Appellee.**

No. 16092.

Court of Appeals of New Mexico.

Sept. 15, 1995.

610

E. Justin Pennington, Albuquerque, for claimant-appellant.

Ray A. Padilla, Deborah S. Dungan, Padilla, Riley & Shane, P.A., Albuquerque, for employer/insurer-appellee.

## OPINION

APODACA, Chief Judge.

1. Ruben M. Collado (Worker) appeals from the Workers' Compensation Judge's (the judge) grant of summary judgment in favor of the City of Albuquerque (Employer). The judge granted summary judgment in favor of Employer on the basis that NMSA 1978, Section 52–1–24(B) (Repl.Pamp.1991), precluded compensation to Worker, for primary mental impairment under the Workers' Compensation Act (the Act) because his job as a paramedic, as a matter of law, usually exposed him to traumatic events. To decide whether the judge erred in granting summary judgment, we first must determine legislative intent and decide whether the definition of primary mental impairment under Section 52–1–24(B) excludes certain categories of workers, such as paramedics whose duties include exposure to traumatic events, from benefits under the Act. We next must decide if there are factual questions relating to whether the events in this case are outside of a worker's usual experience so as to preclude summary judgment. Third, we address Employer's contention, raised pursuant to SCRA 1986, 12–201(C) (Repl.1992), for the purpose of enabling this Court to affirm, that Worker's claim did not amount to "a psychologically traumatic event," but was rather the culmination of progressive stress, which is not compensable under the Act. Finally, we address Worker's claim for attorney fees.

2. We interpret Section 52–1–24(B) to require compensation for a mental impairment only if the worker seeking benefits establishes that the mental injury arose from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and: (1) consists of a psychologically traumatic event; (2) that is *generally* outside of a worker's usual experience, *when compared to the usual experience of workers employed in the same or similar jobs;* and (3) would evoke significant symptoms of distress in workers in general in similar circumstances. In so interpreting the statute, we hold that the intent of the legislature, in enacting Section 52–1–24(B), was not to preclude a worker in a particular occupation from claiming benefits. We also hold that factual questions are present in this case regarding both whether the events were outside of a worker's usual experience and whether the events on which Worker relies are "a psychologically traumatic event." We therefore reverse and remand, but we hold that Worker's claim for attorney fees is contingent upon his recovery of compensation on remand.

## I. BACKGROUND

3. Section 52–1–24(B) defines a "primary mental impairment" as:

a mental illness arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of *a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances.*

(Emphasis added.) Thus, in order for there to be a primary mental impairment under Section 52-1-24(B), a worker must establish that: (1) a psychologically traumatic event occurred, (2) such event was generally outside of a worker's usual experience, and (3) such event would evoke significant symptoms of distress in a worker in similar circumstances.

4. Worker was employed in the emergency medical services field since 1979. In 1983, he began work with the Albuquerque Fire Department and was assigned to a rescue unit as a paramedic. Worker testified that he responded to an average of seven to ten emergency calls per day. Of those calls, approximately ten to twenty percent were serious and potentially life threatening; between one and two percent were immediately life threatening. In 1989, Worker advanced to the rank of rescue lieutenant.

5. Sometime during the middle of 1991, Worker began to experience feelings of anger. Late in that year, Worker had a confrontation with a physician who he believed was interfering with his ability to assist at an accident scene. During the same period, Worker also began having marital difficulties.

6. Worker eventually sought counseling through the City of Albuquerque's Employee Assistance Program (EAP) to help him deal with his anger and to help save his marriage. Through EAP, Worker saw two counselors, both of whom suggested that he might be suffering from Post Traumatic Stress Disorder (PTSD). For purposes of its motion for summary judgment, Employer accepted this diagnosis as true.

7. From June to November 1992, Worker underwent treatment and counseling consistent with the diagnosis of PTSD. Through counseling, Worker identified four incidents occurring between 1988 and 1991 that "bothered" him. In 1988, he responded to a call where a five-year-old girl died as a result of being raped. Two years later, he performed a crycothyrotomy on a woman who attempted suicide. In 1991, he responded to a call where an eight-year-old child was killed when hit by a drunk driver. Finally, also in 1991, Worker attempted to revive a dead infant whom a midwife had delivered at home.

8. Worker continued to work during the spring and into the summer of 1992. During this time, both an EAP counselor and his family physician suggested that Worker take some time off from work. In August 1992, Worker did stop working for approximately two months, returning to work on October 1, 1992. Before he returned, however, Worker asked for and received a reassignment from rescue lieutenant to suppression lieutenant. He was fully able to perform the job duties of suppression lieutenant on his return.

9. On November 9, 1992, Worker filed for workers' compensation benefits, claiming a primary mental impairment as defined by Section 52-1-24(B) of the Act. In his complaint, Worker described his accident as "on going" and claimed to have suffered PTSD as a result of "exposure to disturbing physical trauma on a repetitive basis."

10. Employer moved for summary judgment, arguing that Worker had not identified any specific incident outside his usual work experience that caused his PTSD and that his injury was a result of ongoing exposure to disturbing, stressful trauma experienced by most paramedics on a daily basis. Relying on statements made in Worker's initial claim that his PTSD was a result of ongoing stress and on deposition testimony that Worker felt fine immediately after the four occurrences noted above, Employer argued that the stress produced by these four events was not as a result of an emotion-producing event requiring compensability under the Act. Worker contended, however, that the four events were qualitatively different from his day-to-day experiences and that his diagnosis of PTSD was, by definition, caused by psychologically traumatic events.

11. The judge agreed with Employer and granted summary judgment in its favor. The judge, in her November 15, 1994 letter decision, ruled:

The decision to grant summary judgment is based on the Section 52–1–24 as written. In order for a [w]orker in New Mexico to succeed in his primary mental impairment claim, he must comply with *all* prerequisites of Section 52–1–24. This Section requires the following: (1) a psychologically traumatic event that is, (2) generally outside of a worker's usual experience, *and* (3) the event would evoke significant symptoms of distress in a worker in similar circumstances. Worker's description of the triggering traumatic events sufficiently meet the first requirement. It also stands to reason, that these same triggering traumatic events would produce significant symptoms of distress in other workers in similar circumstances. However, because of the nature of Worker's occupation, he [cannot] show traumatic events are outside his usual work experience. The legislature has limited the availability of this claim by excluding workers with occupations such as, emergency medical personnel, whose job duties require exposure to traumatic events. For this reason, Worker, because of the nature of his occupation, cannot recover on his PTSD claim.

The judge thus concluded that Section 52–1–24(B) was intended to exclude workers whose job duties required exposure to traumatic events from compensation under the Act, based solely on the nature of their occupations.

## II. DISCUSSION

### A. Event Outside A Worker's Usual Experience

12. The Act's requirements for compensation based on mental impairment have changed several times over the years. Under the original Act, a worker was entitled to benefits for a disability caused by a mental condition resulting from a compensable work-related *physical injury*. *See Webb v. Hamilton*, 78 N.M. 647, 436 P.2d 507 (1968) (allowing recovery for depression after injury to worker's eye), *overruled on other grounds by American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 565 P.2d 1030 (1977); *Ross v. Sayers Well Servicing Co.*, 76 N.M. 321, 414 P.2d 679 (1966) (allowing recovery where plaintiff was in an accident that included physical trauma, but the disability was caused by a combination of traumatic neurosis and a compensation neurosis resulting from injury). In 1986, this Court expanded the compensability for mental impairment, holding that psychological injury caused solely by work-related stress not involving a physical injury was compensable under the Act. *See Candelaria v. General Elec. Co.*, 105 N.M. 167, 730 P.2d 470 (Ct.App.), *cert. quashed*, 105 N.M. 111, 729 P.2d 1365 (1986).

13. In response to this Court's decision in *Candelaria*, the legislature amended the Act, *see* Workmen's Compensation Act, 1986 N.M.Laws, ch. 22, to exclude benefits for work-related psychological injuries not resulting from a compensable work-related physical injury. Under the 1986 revisions, "physical impairment" was defined to exclude "impairment of function due solely to psychological or emotional conditions, including mental stress." *Id.* at § 4; NMSA 1978, § 52–1–24(A) (Cum.Supp.1986) (effective until July 1, 1987).

14. In 1987, the legislature again revised the Act significantly, relative to the compensability of work-related psychological injuries. *See* Workers' Compensation Act, 1987 N.M.Laws, ch. 235. The 1987 amendments, specifically Section 52–1–24(B), from which we quoted previously, allowed recovery of benefits for a primary mental impairment—impairments not related to any physical injury—under the specific circumstances noted in the statute.

15. In applying the provisions of Section 52–1–24(B), the judge concluded that Worker satisfied the first element because he had experienced significantly traumatic events. We discuss this conclusion later in this opinion. The judge also concluded that Worker satisfied the third element because it was likely that such traumatic events would produce significant symptoms of distress in a worker in similar circumstances. The judge, however, in her letter decision from which we quoted above, concluded that, due to the

nature of Worker's occupation as a paramedic, Worker could not show that these traumatic events were outside of his usual work experience and thus could not satisfy the second element of Section 52–1–24(B)—that the traumatic event be outside of "a worker's usual experience."

16. It is this second element—that the psychologically traumatic event be outside of a worker's usual experience—that we examine here. Worker argues that the judge erred in construing "a worker's usual experience" in Section 52–1–24(B) to exclude paramedics and other workers in similar occupations from benefits founded on primary mental impairment. We agree.

■ 17. Although it is clear that the legislature intended to establish an objective standard of comparison—whether the psychologically traumatic event experienced by the worker seeking benefits is generally outside a worker's usual experience—the legislature did not define the group of "workers" whose usual experiences are to be compared with the psychologically traumatic event suffered by the specific worker seeking benefits. Traditional principles of statutory interpretation dictate that we first look at the plain meaning of the statutory language. *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985); *Waksman v. City of Albuquerque*, 102 N.M. 41, 43, 690 P.2d 1035, 1037 (1984). In construing a statute, we assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Anaya*, 103 N.M. at 76, 703 P.2d at 173; *Waksman*, 102 N.M. at 43, 690 P.2d at 1037. Additionally, unambiguous language in the statute may not be interpreted to contradict its plain meaning. *Waksman*, 102 N.M. at 43, 690 P.2d at 1037. A statute should not be construed in a manner that would defeat its legislative intent. *Anaya*, 103 N.M. at 76, 703 P.2d at 173; *Waksman*, 102 N.M. at 43, 690 P.2d at 1037.

18. With these principles in mind, we conclude that the legislature's use of the word "a," rather than the word "the," in the phrase "a worker's usual experience" suggests that the legislature intended to give "worker" a broad meaning. Thus, "a worker's usual experience" suggests that the legislature intended to use "worker" in its generic sense, referring to *any* worker in the working world, rather than to the specific worker seeking benefits.

19. Our inquiry does not stop here, however. Based on the legislature's intent to define "a worker's" to mean workers in the general sense, we must still determine how broadly the legislature intended to define that term. The phrase "a worker's usual experience" could be based on three different possible groups of workers. First, it could consist of the "fellow employees" employed in the same or similar jobs by the same employer of the worker seeking workers' compensation benefits. Second, it could consist of workers in the same or similar jobs, including those who work for other employers. Finally, it could consist of all workers in the working world, regardless of occupation or employer.

■ 20. We conclude that, to determine whether the worker seeking benefits suffered "a psychologically traumatic event that is generally outside of a worker's usual experience," a comparison must be made between that worker's psychologically traumatic event and the usual experiences generally encountered by workers in the same or similar jobs as the worker seeking benefits, regardless of whether they work for the same employer. Common sense dictates that the "usual experience" of a worker varies by occupation and location of employment. It is not enough to say his or her occupation involves stressful situations. Workers in any occupation may experience a traumatic event outside their usual experience. In other words, the traumatic value of an event is a question of fact based, in part, on the usual experience of a worker in the same or similar occupation, in the same or similar locality. *See Jensen v. New Mexico State Police*, 109 N.M. 626, 629, 788 P.2d 382, 385 (Ct.App.) (what might constitute a psychologically traumatic event in one occupation may not in another), *cert. denied*, 109 N.M. 563, 787 P.2d 1246 (1990).

■ 21. The definition of primary mental impairment adopted by the legislature in Section 52–1–24(B), is markedly similar to

the medical definition of PTSD set forth in *The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders* Section 309.81 (3rd ed. 1980). *See Jensen*, 109 N.M. at 629, 788 P.2d at 385. *The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders* Section 309.81 (3rd ed. 1980) provides examples in its discussion of post-traumatic stress disorder. The manual explains:

> The essential feature [of post-traumatic stress disorder] is the development of characteristic symptoms following a psychologically traumatic event that is generally outside the range of usual human experience.
>
> . . . .
>
> The [psychologically traumatic event] producing this syndrome would evoke significant symptoms of distress in most people, and is generally outside the range of such common experiences as simple bereavement, chronic illness, business losses, or marital conflict. The trauma may be experienced alone (rape or assault) or in the company of groups of people (military combat). Stressors producing this disorder include natural disasters (floods, earthquakes), accidental man-made disasters (car accidents with serious physical injury, airplane crashes, large fires), or deliberate man-made disasters (bombing, torture, death camps). Some stressors frequently produce the disorder (e.g., torture) and others produce it only occasionally (e.g., car accidents).

*Id.* at 236. We note a marked similarity in the terminology found in that manual and in Section 52-1-24(B).

*Jensen*, 109 N.M. at 629, 788 P.2d at 385 (quoting *The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders* Section 309.81). It is apparent from the similarity of the language used in Section 52-1-24(B) to define primary mental impairment and that used in Section 309.81 of *The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders* to define PTSD, that the legislature intended to allow compensation for mental injuries analogous to those present in cases of PTSD, and to exclude compensation for injuries suffered from inherent job stress, not involving a sudden, traumatic emotion-provoking event. It is therefore clear that the legislature did not intend to exclude workers in certain occupations from compensability under Section 52-1-24(B), but rather, to allow recovery of benefits for workers suffering from a form of work-related PTSD, irrespective of the worker's occupation.

22. Our interpretation of Section 52-1-24(B) also strikes a balance between the overall purposes embodied in the Act. By comparing the "usual experiences" endured by similarly situated workers, our standard provides workers with compensation for legitimate work-related injuries, while at the same time limiting employers' liability to injuries caused by its industry.

■ 23. We conclude that the judge erred in construing Section 52-1-24(B) to exclude any emergency-type worker from compensation for primary mental impairment under the Act. *Cf. Flint v. Town of Bernalillo*, 118 N.M. 65, 878 P.2d 1014 (Ct.App.) (although the issue in the case was timeliness, police officer allowed to recover for PTSD five years after witnessing a woman shoot herself), *cert. denied*, 118 N.M. 178, 879 P.2d 1197 (1994); *Jensen*, 109 N.M. 626, 788 P.2d 382 (compensation disallowed to police officer because of no particular traumatic event rather than because of occupation). We hold the legislature did not intend to exclude any occupational group from seeking compensation for primary mental impairment.

■ 24. In light of our interpretation of Section 52-1-24(B), we also hold that questions of material fact existed in this appeal precluding the entry of summary judgment. In this case, what constitutes a worker's usual experience as a paramedic in the City of Albuquerque is a question of fact. The judge must also determine if any of the four incidents described by Worker as causing his diagnosis of PTSD were outside of the usual work experience of a paramedic in the City of Albuquerque. Because these questions of

fact remain to be resolved, summary judgment was improper.

25. Although Worker had experienced hundreds of life threatening situations during his years as a paramedic, only the four, previously-noted events stood out. Employer argues that Worker failed to prove that these "traumatic events" he experienced were unusual. Worker, however, did not need to "prove" that one or more of the four events he recounted were unusual, only that there was a genuine issue of fact as to their type and quality. *See Roth v. Thompson,* 113 N.M. 331, 334–35, 825 P.2d 1241, 1244–45 (1992). An issue of material fact is raised when there is some evidence in dispute. *Pharmaseal Labs., Inc. v. Goffe,* 90 N.M. 753, 759, 568 P.2d 589, 595 (1977). The evidence need not be conclusive in order to raise the issue. *Id.* Summary judgment may not be used as a substitute for trial on the merits. *Ponce v. Butts,* 104 N.M. 280, 283, 720 P.2d 315, 318 (Ct.App.1986).

26. Employer also argues that Worker did not suffer from sleeplessness, nor did he suffer any other physical symptoms immediately after each incident. These facts, however, are not dispositive. There is no showing by Employer that immediacy of symptoms is typical of PTSD and, because PTSD is a latent type of injury, Worker need not have made the connection between these events and his psychological injury until his medical diagnosis. *See Flint,* 118 N.M. at 67–68, 878 P.2d at 1016–17. To create a reasonable doubt, the opposing party must demonstrate the existence of specific evidentiary facts that would require a trial on the merits. *Roth,* 113 N.M. at 335, 825 P.2d at 1245. Here, Worker created reasonable doubt by delineating the events that he perceived to be the cause both of his PTSD and of a type to cause symptoms of distress in a worker in similar circumstances. We therefore conclude that the judge erred in granting summary judgment based on the ground stated in her letter.

### B. "A Psychologically Traumatic Event"

27. Employer contends that the judge erred in concluding that Worker satisfied the first prong of the test for primary mental impairment, which requires that the impairment be caused by "a psychologically traumatic event." Employer contends that the cause of Worker's impairment, if any, was gradual stress, which is not compensable under *Jensen,* 109 N.M. at 629, 788 P.2d at 385. Although Worker agrees that gradual, progressive stress is not compensable under the Act, he contends that each of the four identified events is sufficient under the statute to qualify as "a psychologically traumatic event." Worker offers the following analogy: "The trauma induced by a single blow to the head with a blunt instrument does not become gradual or progressive simply because it is followed by three additional blows to the head." With this understanding of Worker's theory, we hold that there are factual issues on the issue of "a ... traumatic event" for reasons similar to those discussed in the previous section.

### C. Attorney Fees

28. Worker seeks an award of attorney fees on appeal and argues that the magnitude of his success for both himself and all other workers routinely exposed to traumatic events as part of their jobs entitles him to substantial fees regardless of the outcome of these proceedings both below and on appeal. We disagree. New Mexico follows the usual American rule on attorney fees—fees are not awarded unless there is specific authority for such award. *State ex rel. State Highway Dep't v. Baca,* 116 N.M. 751, 753, 867 P.2d 421, 423 (Ct.App.1993), *rev'd on the grounds,* 120 N.M. 1, 896 P.2d 1148 (1995). The statute authorizing the award of fees in workers' compensation cases requires that compensation be collected. NMSA 1978, § 52–1–54(D) (Repl.Pamp.1991) (effective until January 1, 1991); *Ortiz v. Ortiz & Torres Dri–Wall Co.,* 83 N.M. 452, 455, 493 P.2d 418, 421 (Ct.App.1972). Thus, if compensation is collected on remand, the judge should include in the fees awarded an appropriate amount for Worker's attorney fees on appeal. *See Nelson v. Nelson Chem. Corp.,* 105 N.M. 493, 497, 734 P.2d 273, 277 (Ct.App.1987).

### III. CONCLUSION

29. We hold that: (1) the judge erred in construing the definition of primary mental

impairment to exclude certain categories of workers, such as paramedics whose duties include exposure to traumatic events, from benefits under the Act; (2) a mental impairment is compensable under Section 52–1–24(B) if the worker seeking benefits establishes that his mental injury arose from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usual experience, when compared to the usual experience of workers employed in the same or similar jobs, and would evoke significant symptoms of distress in a worker in similar circumstances; and (3) genuine issues of material fact exist precluding summary judgment. We thus reverse and remand for a trial on the merits.

30. IT IS SO ORDERED.

PICKARD and BUSTAMANTE, JJ., concur.