738 P.2d 132
**CLIMAX CHEMICAL COMPANY, Appellant,**

v.

**NEW MEXICO ENVIRONMENTAL IMPROVEMENT BOARD and Environmental Improvement Division of the New Mexico Health and Environment Department, Appellees.**

**No. 8896.**

Court of Appeals of New Mexico.

May 5, 1987.

Paul M. Bohannon, Albuquerque, for appellant.

Hal Stratton, Atty. Gen., Sheila E. Brown, Asst. Atty. Gen., Santa Fe, for appellee, Environmental Imp. Bd.

Louis W. Rose, Sp. Asst. Atty. Gen., Santa Fe, for appellee, Environmental Imp. Div.

## OPINION

BIVINS, Judge.

Appellant, Climax Chemical Company (Climax), appeals from the adoption of revised Liquid Waste Disposal Regulations by the state Environmental Improvement Board (Board) pursuant to NMSA 1978, Section 74-1-8(A)(3) (Repl.1986). NMSA 1978, Section 74-1-9(H) (Repl.1986) gives any person who is or may be affected by a regulation adopted by the Board a right of appeal to this court. The parties agree Climax is such a person since it maintains two septic systems, each with capacities within the reach of the regulations. We granted the New Mexico Environmental Improvement Division's (Division) motion to be added as a party and to brief the issue presented.

While conceding proper enactment of the regulations, Climax challenges certain provisions as unconstitutionally vague. It claims the regulations fail to provide specific standards and, therefore, confer unbridled discretion and permit arbitrary application. Because of these shortcomings, Climax asserts abuse of discretion. Since Climax has not been denied a permit to install a new liquid waste disposal system or to modify an existing one, the appeal really presents a pre-enforcement facial challenge to the regulations. We, therefore, hold only that the regulations challenged are not facially vague. In doing so, we leave open the question of whether the regulations may be successfully challenged in their application.

The regulations require a person to obtain a permit issued by the Division before installing a new liquid waste system or modifying an existing one. Once an applicant files for a permit, the Division is required, within ten working days of receipt, to either grant the permit, grant it subject to conditions, or deny it. "A person who violates any regulation of the board is guilty of a petty misdemeanor." NMSA 1978, § 74-1-10 (Repl.1986). The regulations provide specific requirements as to lot size, setback and clearance. Climax has no quarrel with the permit procedure or the specific requirements. What it objects to is the following provision:

[Section 1-201] D. If the division finds that specific requirements in addition to or more stringent than those provided in Section 2-200 of these regulations are necessary to prevent a hazard to public health or the degradation of a body of water, the division may issue a permit conditioned on those more stringent or additional specific requirements.

Climax also challenges the phrase "hazard to public health," defined in Section 1-102(R), as: "the indicated presence in water or soil of parasite, bacterial, viral, chemical or other agents under such conditions that they may adversely impact human health[.]" It does not challenge the phrase "degradation of a body of water," since the definition of that term refers to specific recognizable standards established by governmental agencies. *See* § 1-103(H).

Climax asserts that the terms "under such conditions," "necessary to prevent a hazard to public health" and "in addition to or more stringent than" are unconstitutionally vague, do not give sufficient notice of the requirements for compliance, and constitute an abuse of discretion by the Board for failing to set definite standards and for allowing arbitrary decision making on an *ad hoc* basis.

Climax relies on *Bokum Resources Corp. v. New Mexico Water Quality Control Commission*, 93 N.M. 546, 603 P.2d 285 (1979). In *Bokum,* the supreme court ruled that the definition of " 'toxic pollutants,' " which was determined " 'on the basis of information available to the director or the commission,' " was unconstitutionally vague on its face. *Id.* at 552, 603 P.2d at 291. Climax argues that the regulations in question are likewise vague.

Climax also contends the regulations allow the Division to decide arbitrarily when to impose stricter standards without notice of the situations under which such stricter standards might be imposed. To support this contention, Climax cites *Safeway Stores, Inc. v. City of Las Cruces,* 82 N.M. 499, 484 P.2d 341 (1971), a case that dealt with the transfer of a liquor license. Although the prospective transferee met all statutory requirements, the city maintained it had absolute discretion to deny the permit. The court disagreed and ruled that the city's discretion extended only to determining whether statutory guidelines were met. Climax contends that the liquid waste regulations confer similar unbridled discretion on the Division and cannot stand under *Safeway Stores.*

The Board argues that the regulations set forth specific standards for the additional or more stringent conditions via the definitions in Section 1-103. The Board distinguishes *Bokum,* arguing that no reference is made in the challenged regulations to information or standards outside of its terms. Rather, the Board contends that the definitions in Section 1-103 define with reasonable certainty the criteria necessary to impose additional or more stringent requirements. It argues that because the parties receive notice of additional requirements before they receive a permit, they have ample opportunity to avoid potential violations. The Board relies on *Kerr-McGee Nuclear Corp. v. New Mexico Water Quality Control Commission,* 98 N.M. 240, 647 P.2d 873 (Ct.App.1982), which held that the regulations (as revised since *Bokum* ), were not vague. The court in *Kerr-McGee* reasoned that determinations of prohibited conduct would be made *before* a discharge plan was approved and, thus, the discharger would have notice of potential violations. As in *Kerr-McGee,* the Board and the Division argue that the regulations provide detailed provisions for a hearing for any person dissatisfied with the additional or more stringent requirements imposed. *See* § 1-203(A) & (B). While the regulations do not expressly provide for an appeal to a court, we assume that a person dissatisfied with the result of the hearing can seek judicial review.

■ We are not entirely persuaded by the Board's and the Division's arguments that the permit procedure and subsequent appeal process will adequately provide advance notice. Counsel for the Board and the Division conceded at oral argument that no national standards exist for establishing a "hazard to public health." If no standards exist, then review of the regulations could be hindered for lack of objective guidance, unlike in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board,* 102 N.M. 8, 690 P.2d 451 (Ct.App.1984), where National Ambient Air Quality Standards guided the court in determining the definition of "injury to health." Our concerns, which we view as

premature, do not prevent us from denying Climax's facial challenge of vagueness. In so holding, we rely neither on *Bokum* nor *Kerr-McGee*.

"The vagueness doctrine is based on notice." *State ex rel. Health & Social Servs. Dep't v. Natural Father*, 93 N.M. 222, 225, 598 P.2d 1182, 1185 (Ct.App.1979). In challenging a law as unduly vague, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Our examination of the challenged regulations reveals that at least some of the applications provide adequate notice to a permit seeker.

In examining the language of challenged Section 1–201(D) to determine vagueness, we examine three phrases: "those provided in Section 2–200," "hazard to public health" and "degradation of a body of water."

*Those Provided in Section 2–200:* Section 2–200 provides specific requirements as to lot size (imposing minimum lot sizes depending on gallons used per day); setback distances from water supplies, watercourses, canals, arroyos and public lakes; and requirements for clearance to bedrock and seasonal high ground water tables. A plain reading of Section 1–201(D) indicates that the Division can require "more stringent [requirements] than those provided in Section 2–200." Thus, in applying "more stringent" requirements, the Division could require larger lot sizes, deeper setbacks and more clearance. In such a context, "more stringent" does not appear vague. The meaning of "in addition to" is less clear. Thus, we look to the other definitions.

*Hazard to Public Health:* The text of this definition is set out above. Climax challenges the phrase "under such conditions that they may adversely impact human health" as providing "no standards as to the nature of conditions which are included." At the hearing, Climax apparently sought to change the words "under such conditions" to "when considered in the light of *climate, geology, surface* and *wa-*

*ter usage.*" The Board rejected this suggestion as too narrow in scope, excluding such factors as soil composition and groundwater flow. While it might have been helpful to mention some specific conditions (as nonexclusive examples), the omission is not fatal. We know the agents included in the definition must be present in water or soil; we have specific examples of the agents; we know the general purpose of the environmental regulations; and we have other specific requirements set out in Section 2–200. Viewed in the context of the entire regulatory provisions, we do not believe the definition of "hazard to public health" is so vague as to be invalid.

*Degradation of a Body of Water:* This means to reduce the physical, chemical or biological qualities of a body of water and includes, but is not limited to, the release of material which could result in the exceeding of standards established by Water Quality Standards for Interstate and Intrastate Streams in New Mexico, and, in ground water could be used as a domestic water supply source, standards established by the New Mexico Water Quality Control Commission and by the New Mexico Regulations Governing Water Supplies[.]

Section 1–103(H). Climax asserted in its brief that no numerical standards exist in the liquid waste regulations. This is incorrect. At oral argument, we determined that the water quality standards incorporated into the definition of "degradation of a body of water" entail numerical standards. Therefore, a party does have some specific guidance under Section 1–201(D).

To summarize, we do not find that the challenged regulations are vague in all their applications. The terms "more stringent" and "degradation of a body of water" provide clear and specific guidelines. That some of the terms are clear is enough to keep the regulations from being unconstitutionally vague. *Cf. Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.* While the terms "additional" and "hazard to public health" are less clear, they are not fatal to the regulations.

Throughout our analysis, we considered that the purpose of the regulations in question is to provide "for the prevention and

abatement of public health hazards and surface and groundwater contamination from onsite liquid waste disposal practices." Section 1-101. Besides containing specific and more general criteria, the crux of the challenged regulation is "necessary to prevent" hazards to public health and the degradation of water.

In this field [of environmental protection] it has long been recognized that it is impossible to anticipate every factual situation that might arise under a given set of regulations. Further, it is important on the record before us to remember that we are dealing with regulations, legislative justification for which is found in such broadly applied terms as *public interest, social well-being, environmental degradation,* and the like. That it is within the power of the legislature to enact legislation for these purposes is well settled. In order to give effect to these broad legislative concerns, however, it is necessary that the standards developed by the administrative agency be somewhat general. Indeed, administrative regulations of this kind are required to hold the difficult line between overbreadth or vagueness on the one hand and inflexibility and unworkable restriction on the other.

*New Mexico Mun. League, Inc. v. New Mexico Envtl. Imp. Bd.,* 88 N.M. 201, 209, 539 P.2d 221, 229 (Ct.App.1975) (citations omitted; emphasis in original).

■ Although *State ex rel. Sofeico v. Heffernan,* 41 N.M. 219, 67 P.2d 240 (1936), dealt with the delegation of power from the legislature to the State Game Commission, we believe it states a rule applicable here:

"It is also well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action, but on the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare."

*Id.* at 228-229, 67 P.2d at 245 (quoting from 12 A.L.R. 1447 (1921)). Also, "[i]t is

not necessary that a regulation be drafted with absolute precision, only that it can be construed using known, accepted rules of construction." *El Paso Elec. Co. v. New Mexico Pub. Serv. Comm'n,* 103 N.M. 300, 304, 706 P.2d 511, 515 (1985). We do not require absolute or mathematical certainty. *State ex rel. Bliss v. Dority,* 55 N.M. 12, 225 P.2d 1007 (1950). The policy behind this standard is obvious. "The standards regulating municipal solid waste disposal are doubtless difficult to devise, but if such controls are to be effective, they, of necessity, must be broad and somewhat flexible. If controls are too precise, they will provide easy escape for those who wish to circumvent the law." *Browning-Ferris, Inc. v. Texas Dep't of Health,* 625 S.W.2d 764, 768 (Tex.App.1981).

In keeping with the mandate that the regulations "shall be liberally construed to carry out their purpose," Section 3-100, we find that they are not fatally deficient in guidance. Applying the standard of *Village of Hoffman Estates,* we do not find the challenged regulations impermissibly vague in all of their applications. The Board did not abuse its discretion in promulgating the regulations.

Finally, it seems premature and unwise to anticipate an arbitrary application of the "additional or more stringent" requirements at this stage. *See Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. at 503-504, n. 21, 102 S.Ct. at 1196, n. 21 (in discussing the risk of discriminatory enforcement of a drug paraphernalia statute, the Court commented, "The theoretical possibility that the village will enforce its ordinance ... [in a discriminatory manner] is of no due process significance unless the possibility ripens into a prosecution."). We, therefore, do not consider whether the regulations may be successfully challenged once they are applied.

IT IS SO ORDERED.

GARCIA and APODACA, JJ., concur.