908 P.2d 776

**OLD ABE CO., Lincoln Gold & Tungsten, Inc., Grubstake Mining and Exploration, Inc., United Minerals, Inc., R.C. "Dick" Manning d/b/a Challenge Mining Co., County of Catron, and County of Sierra, Appellants,**

v.

**NEW MEXICO MINING COMMISSION, Appellee.**

No. 15750.

Court of Appeals of New Mexico.

Oct. 24, 1995.

Certiorari Denied Dec. 11, 1995.

Russell Moore, W. Spencer Reid, Keleher & McLeod, P.A., Albuquerque, for Appellants.

Richard W. Darnell, Socorro, for Grubstake Mining and Exploration, Inc.

James W. Catron, La Joya, for Counties of Catron and Sierra.

Tom Udall, Attorney General, William R. Brancard, Ass't Attorney General, Santa Fe, for Appellee.

Douglas Meiklejohn, New Mexico Environmental Law Center, Santa Fe, for Amici Curiae Concerned Citizens del Norte, the New Mexico Wilderness Study Committee, and the Sierra Club.

## OPINION

APODACA, Chief Judge.

1. In 1993, the New Mexico Legislature adopted the New Mexico Mining Act (the Act), NMSA1978, Sections 69–36–1 to –20 (Repl.Pamp.1993), for the purpose of "promoting responsible utilization and reclamation of lands affected by exploration, mining or the extraction of minerals that are vital to the welfare of New Mexico." Section 69–36–2. The Act created the New Mexico Mining Commission (the Commission) and mandated that the Commission enact implementing regulations within one year of the effective date of the Act. Section 69–36–7(A). In July 1994, after extensive hearings, the Commission promulgated the New Mexico Mining Act Rules (the regulations) establishing the

regulatory scheme mandated by the legislature. The regulations were filed on July 12, 1994, and became effective upon filing.

2. In this appeal, Old Abe Company, Lincoln Gold & Tungsten, Inc:, Grubstake Mining and Exploration, Inc., United Minerals, Inc., R.C. "Dick" Manning d/b/a Challenge Mining Company, the County of Catron, and the County of Sierra (collectively, the miners) seek review of the Commission's adoption of the regulations under the Act. *See* § 69–36–16(A) (judicial review of regulations). We must decide whether the Commission's decision to adopt the regulations was arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law. *See* § 69–36–16(F). To resolve this question, we are asked to decide several subordinate issues: (1) do the regulations conflict with the Act; (2) do the regulations violate due process standards because they are impermissibly vague and delegate unguided discretion to the director of the mining and minerals division of the Energy, Minerals and Natural Resources Department (the Director); (3) do the regulations violate Article III, Section 1 of the New Mexico Constitution because they represent an unconstitutional delegation of legislative authority; (4) do the Act and regulations violate Article VIII, Section 9 of the New Mexico Constitution because they permit taxes to be levied by a non-elective body; (5) do the Act and regulations violate Article IV, Section 30 of the New Mexico Constitution, requiring that appropriations be specific; (6) do the exemptions from the definition of "mining" in both the Act and the regulations violate equal protection principles; and (7) do the regulations violate the "rough proportionality requirement" recently enunciated by the United States Supreme Court in *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994)?

3. During the pendency of this appeal, Concerned Citizens Del Norte and the New Mexico Wilderness Study Committee moved to intervene. We denied the motion but permitted these organizations, together with the Sierra Club, to file an *amici curiae* brief, which they did.

4. We first address a jurisdictional issue and determine that we have no authority in this appeal to review the validity of the Act except insofar as the validity of the Act and the validity of regulations turn on an identical analysis. Because of our lack of jurisdiction, we do not address the miners' fifth issue. With respect to the miners' other challenges, we hold that most of the fee structure established by New Mexico Energy, Minerals and Natural Resources Department Regulation 2, 5 N.M.Reg. No. 846, 849–50 (July 30, 1994) (Regulation 2), does not comply with the Act. With respect to the remaining challenges, we hold that the Commission's adoption of the regulations was not arbitrary, capricious, or an abuse of discretion, and was in accordance with law. We therefore affirm in part and reverse and remand in part.

## I. DISCUSSION

### A. Jurisdiction and Standing

5. Initially, we must decide whether this Court, in this particular appeal, has the authority and power to review both the regulations and the Act generally. This question arises because the Commission has taken no action against the miners under the regulations. This appeal therefore presents only a pre-enforcement facial challenge to both the regulations and the Act. We hold that this Court does have the authority and the power to review the regulations. We also hold that, in the context of this appeal only, this Court does not have the authority to review the constitutionality of the Act.

#### 1. The Regulations

■ 6. The Act specifically provides for judicial review of the regulations adopted by the Commission. *See* § 69–36–16(A). Section 69–36–16(A) allows "[a]ny person who is *or may be* affected by a regulation of the [C]ommission [to] appeal the action of the [C]ommission by filing a notice of appeal with the court of appeals within thirty days from the filing date of the regulation with the state records center." (emphasis added); *see Wylie Bros. Contracting Co. v. Albuquerque–Bernalillo County Air Quality Control Bd.,* 80 N.M. 633, 639, 459 P.2d 159, 165 (Ct.App.

1969) (holding that term "decision" in Article VI, Section 29 of New Mexico Constitution embraced administrative regulations adopted and filed with supreme court librarian). This Court examined a similar jurisdictional question concerning the actions of the Albuquerque–Bernalillo County Air Quality Control Board in adopting and filing regulations under the Air Quality Control Act:

This section of our statutes does not require that an appellant be named in the transcript of the record, but only that he be a "person who is or may be affected by a regulation adopted by the board." Appellants have asserted in their Notice of Appeal that they are persons who are or may be affected by the regulations heretofore adopted by appellee and filed with the Supreme Court Law Librarian. This assertion is in no way contested.

In the usual case or lawsuit which reaches this court for appellate review, the parties before this court must have appeared as litigants in the court below, and the record must so show. The same is true of the usual appeal from a decision or order of an administrative agency. But the subject matter of direct appeals to this court under the Air Quality Control Act is not the usual judgment of a court entered in a case or lawsuit, nor is it the usual decision or order entered by an administrative agency after a hearing on contested issues.

The problem of air pollution is a relatively new area of extensive governmental control, and our Air Quality Control Act was not adopted until 1967. It is apparent to us that the Legislature intended that this court should have the power to review the validity of air pollution control regulations adopted by a board before any claimed violation thereof has occurred, and that any person who is or may be affected by a regulation has standing to invoke the appellate jurisdiction of this court to judicially review such a regulation to the extent provided in § 12–14–7, supra. We see no reason to hold the Act unconstitutional because it grants standing to invoke our jurisdiction to those who are or may be affected by a regulation.

*Id.* at 640, 459 P.2d at 166. Because there has been no challenge to the miners' assertion in their notice of appeal that they are persons who are or may be affected by the regulations, we hold that this Court has the authority and power to review the regulations in this appeal.

### 2. The Act

■ 7. We reach a different conclusion with regard to the miners' challenge to the Act itself, in light of the posture of this case on appeal. Article VI, Section 29 of the New Mexico Constitution sets out the jurisdiction of this Court:

The court of appeals shall have no original jurisdiction. It may be authorized by law to review directly decisions of administrative agencies of the state, and it may be authorized by rules of the supreme court to issue all writs necessary or appropriate in aid of its appellate jurisdiction. In all other cases, it shall exercise appellate jurisdiction as may be provided by law.

Thus, the Court of Appeals is a court of limited jurisdiction. *Id.; see also State ex rel. Dep't of Human Servs. v. Manfre,* 102 N.M. 241, 243, 693 P.2d 1273, 1275 (Ct.App. 1984).

8. Here, the legislature has authorized this Court to review *the regulations* promulgated by the Commission. *See* § 69–36–16(A) ("Any person who is or may be affected by *a regulation* of the [C]ommission may appeal the action of the [C]ommission by filing a notice of appeal with the court of appeals....") (emphasis added); § 69–36–16(F) ("Upon appeal the court shall set aside *the regulation*....") (emphasis added); *cf. Wylie Bros.,* 80 N.M. at 639, 459 P.2d at 165 (holding that term "decision" in Article VI, Section 29 of New Mexico Constitution embraced administrative *regulations* adopted by agency). It is apparent from a reading of Section 69–36–16 that the legislature did not intend to confer on this Court the power and the authority to review the Act in an appeal such as this—an appeal challenging the regulations on their face.

9. Additionally, the miners have brought this appeal pursuant to Section 69–36–16 (judicial review of regulations) and SCRA1986,

12–601(B) (Repl.1992) (appeals from administrative entities). Neither Section 69–36–16 nor Rule 12–601 confer authority on this Court to review the Act under the circumstances of this appeal. Nor is this Court authorized to review the miners' appeal under NMSA 1978, Section 34–5–8(A)(6) (Repl. Pamp.1990). Because Section 69–36–16 is a specific statute governing appeals from regulations adopted by the Commission, we conclude the latter statute controls appeals from regulations adopted by the Commission. *See Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 182, 803 P.2d 664, 667 (1990). We therefore find no basis for this Court to review the constitutionality of the Act in this appeal.

### B. Standard of Review

10. Section 69–36–16(F) specifies the standard of review applicable to this appeal: "Upon appeal the court shall set aside the regulation ... only if it is found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Additionally, while reviewing the regulations at issue, we must keep in mind the following:

An agency's rule-making function involves the exercise of discretion, and a reviewing court will not substitute its judgment for that of the agency on that issue where there is no showing of an abuse of that discretion. Rules and regulations enacted by an agency are presumed valid and will be upheld if reasonably consistent with the statutes that they implement.

A party challenging a rule adopted by an administrative agency has the burden of showing the invalidity of the rule or regulation. The reasonableness of an administrative rule or regulation is not purely a legal question; a factual basis must appear. To successfully challenge a rule promulgated by an agency exercising its delegated legislative authority, the challenger must show, in part, that the rule's requirements are not reasonably related to the legislative purpose but are arbitrary and capricious. " 'Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in

disregard of facts and circumstances.... Where there is room for two opinions, [the] action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.' "

*Tenneco Oil Co. v. New Mexico Water Quality Control Comm'n*, 107 N.M. 469, 473, 760 P.2d 161, 165 (Ct.App.1987) (quoting *Hi-Starr, Inc. v. Washington State Liquor Control Bd.*, 106 Wash.2d 455, 722 P.2d 808, 814 (1986)) (citations omitted), *cert. denied sub nom., Navajo Ref. Co. v. New Mexico Water Quality Control Comm'n*, 106 N.M. 714, 749 P.2d 99 (1988).

### C. Conflicts Between The Regulations And The Act

11. The miners contend that the regulations are inconsistent with the Act in several respects. We first consider their attack on the regulation regarding fees.

12. The Act requires the Commission to:

establish by regulation a schedule of annual administrative and permit fees, which shall equal and not exceed the estimated costs of administration, implementation, enforcement, investigation and permitting pursuant to the provisions of the New Mexico Mining Act. The size of the operation, anticipated inspection frequency and other factors deemed relevant by the commission shall be considered in the determination of the fees....

Section 69–36–7(M). The Commission adopted the following fee structure:

2.1 Application fees shall be determined under the following schedule:

A. The permit application fee for an existing mining operation shall not exceed $28,000 and shall be determined in accordance with Section 2.3.

B. The permit application for a new mining operation shall not exceed $30,000 and shall be determined in accordance with Section 2.3. In addition, any cost associated with the preparation of an environmental evaluation by a third party shall be paid for by the applicant.

C. The fee for a permit application for an existing minimal impact mining operation shall not exceed $250 and shall be

determined by the Director based on the estimated cost for investigation and issuance, and consideration of the economic impact of the fee on the viability of the proposed project.

D. The fee for an exploration permit is $250.

E. The fee for a minimal impact exploration permit is $50.

F. The fee for transferring a permit is $50.

G. The fee for each permit revision including closeout plans shall not exceed $5,000 ($250 for minimal impact operations) and shall be determined by the Director based on the estimated cost for investigation and issuance.

H. The fee for each application for a variance shall not exceed $1,000 and shall be determined by the Director based on the estimated cost for investigation and issuance.

I. The application fee to determine whether a mine or portion of a mine qualifies for prior reclamation shall not exceed $250 and shall be determined by the Director based on the estimated cost for investigation and issuance.

J. The Director may waive application fees for variances, revisions, or transferring a permit which requires little or no cost for investigation and issuance.

2.2 Annual Fees

A. The annual fee for existing and new mining operations shall not exceed $26,000 and shall be determined in accordance with Section 2.3. This fee shall be due on or before the 31st of December 1995, and each subsequent year for the duration of the permit or as reduced upon completion of reclamation activities.

B. The annual fee for a minimal impact new or existing mining operation shall not exceed $250 and shall be determined by the Director based on the estimated cost of annual inspections and in consideration of the economic impact of the fee on the viability of the project.

2.3 Assessment of Fees Below the Cap

A. The following tables are to allow the Director to assess permit application and annual fees below the cap amounts for existing and new non-minimal impact operations. These tables reflect the complexity of an operation. Amounts within each range shall be determined by the Director based on the estimated cost of investigation and issuance of permit and the estimated cost of annual inspection.

B. The permit application fee for existing and new mining operations shall be the sum of the estimated cost within each of the following ranges of fees applicable to the operation:

| Facility | Range |
| --- | --- |
| Open Pit Mine | $0–7,000 |
| Tailings Dams | $0–7,000 |
| Waste Dumps | $0–7,000 |
| Plant Site | $0–2,000 |
| Leach Dumps | $0–7,000 |

C. The annual fee for existing and new mining operations shall be the sum of the estimated amounts within each of the following ranges of fees applicable to the operations:

| Facility | Range (Existing or New) |
| --- | --- |
| Open Pit Mine | $0–6,000 |
| Tailings Dams | $0–6,000 |
| Waste Dumps | $0–6,000 |
| Plant Site | $0–2,000 |
| Leach Dumps | $0–6,000 |

■ 13. We agree with the miners that the regulation does not establish a "schedule of . . . fees" as required by the Act. Under the regulations, almost all fees are set on a case-by-case basis. For example, a permit application fee for an existing mining operation is determined for each individual application on the basis of the Director's estimate of the cost for investigating and issuing the permit. N.M.Reg. 2.1(A), 2.3(A). This is not what the statute contemplated. If the legislature had intended fees to be set on an individualized basis for each applicant or permittee, it would not have included the reference to a "schedule" in Section 69–36–7(M); instead, it simply would have stated that the Commission should "assess annual adminis-

trative and permit fees, which shall equal and not exceed the estimated cost of administration, implementation, enforcement, investigation and permitting pursuant to the provisions of the New Mexico Mining Act." All that the regulations at issue in this appeal do is set maximum fees. We do not believe that is sufficient to establish a "schedule of fees as required by the Act."

14. In common parlance, a schedule is a "statement of details." *The Random House Dictionary of the English Language* 1276 (1971). In the present context, we believe that the common understanding of the word "schedule," and the meaning intended by the legislature, is a table that classifies mining operations by type and sets a specific, fixed fee for each type. *See Hutton v. Gill*, 212 Ind. 164, 8 N.E.2d 818, 819–20 (1937) (teacher salary schedule). An applicant for a permit could consult the schedule and, based on the type of operation for which the permit is being sought, could determine the fee that was to be paid. Ironically, the regulations require permit fees to accompany applications, *see, e.g.,* Regulation 3.2(E) (minimal impact operations); Regulation 4.1(D)(13) (exploration), Regulation 5.2(D)(10) (existing mining operation), Regulation 6.2(D)(9) (new mining operation); yet the regulations do not make it possible for the applicant to compute the fee before submitting the application.

15. We hold that the Commission has failed to comply with the statutory requirement that it produce a schedule of fees, and we therefore invalidate those provisions of Regulation 2.1 that do not set a determinate fee.

16. The miners also contend that the definition of "affected area" appearing in the Act conflicts with the definition of "affected area" appearing in the regulations, *see* Section 69–36–3(A) (defining "affected area"); Regulation 1.1 (same), and that this difference in definitions "is a dramatic expansion of the Commission's jurisdiction, through dilution of the standard by which to determine a miner's responsibility outside a permit area." We find no merit to this argument.

17. On the one hand, the Act defines "affected area" as "the area outside of the permit area where the land surface, surface water, ground water *and* air resources are impacted by mining operations within the permit area." Section 69–36–3(A) (emphasis added). On the other hand, the regulations define "affected area" as "the area outside of the permit area where the land surface, surface water, ground water *or* air resources are impacted by mining operations within the permit area." Regulation 1.1 (emphasis added). These definitions are identical, except for the use of "and" in the Act and the use of "or" in the regulations.

18. Traditional principles of statutory interpretation dictate that we first look at the plain meaning of the statutory language. *General Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985); *Waksman v. City of Albuquerque*, 102 N.M. 41, 43, 690 P.2d 1035, 1037 (1984). In construing a statute, we assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Anaya*, 103 N.M. at 76, 703 P.2d at 173; *Waksman*, 102 N.M. at 43, 690 P.2d at 1037. When, however, the wording of a statute "runs counter to the apparent intent of the statute, or … it creates consequences that the legislature could not have desired, or … the literal meaning leads to conclusions that are unjust or nonsensical, then [this] Court must look beyond the four corners of the statute." *Investment Co. v. Reese*, 117 N.M. 655, 658, 875 P.2d 1086, 1089 (1994) (citations omitted).

19. The Commission avoided an absurd interpretation of the Act by changing the "and" to "or" in the definition of "affected area." *See* § 69–36–3(A); Regulation 1.1. "[W]here the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *Stanley v. Raton Bd. of Educ.*, 117 N.M. 717, 719, 876 P.2d 232, 234 (1994) (quoting *State v. Nance*, 77 N.M. 39, 46, 419 P.2d 242, 246–47 (1966) (internal quotation marks omitted), *cert. denied*, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967)). When a statute is unclear, an agency's interpretation of the stat-

ute through rule making is entitled to be given "substantial weight" by the courts. *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 357, 871 P.2d 1352, 1363 (1994).

■ 20. The literal interpretation of "affected area" appearing in the Act, as well as the interpretation urged by the miners, is unworkable. It is highly unlikely that there would be any area outside of a mine in which the "land surface, surface water, groundwater and air resources" are simultaneously impacted by the mining operation. We can conceive of no plausible reason why the legislature would be concerned about environmental impact only when an area was simultaneously covered by surface water and was above groundwater, and the mine adversely affected the land, the surface water, the groundwater, and the air above. The legislature must have intended the "affected area" to be an area where *either* the air, surface water, ground water *or* land surface were impacted. The Commission avoided the absurd result and furthered the legislative intent by changing "and" to "or." *See People v. Skinner*, 39 Cal.3d 765, 217 Cal.Rptr. 685, 704 P.2d 752 (1985) (supporting substitution of "or" for "and"); *see also* § 69–36–7(V) (Commission has authority to adopt any regulations "necessary and appropriate" to carry out the purposes and provisions of the Act).

21. The miners complain about the regulations concerning financial assurance requirements, *see* Section 69–36–7(Q); Regulation 12.5, but they have failed to explain how and why the regulations exceed the Commission's statutory authority. The miners also contend that the Commission has failed to comply with the statutory mandate that it "establish criteria to determine which permit modifications may have significant environmental impact." Section 69–36–7(D). The miners appear to be correct in this contention. Nevertheless, we fail to see how the Commission's failure to comply with this statutory mandate would invalidate any of the regulations adopted by the Commission. The remedy, assuming the miners' contention to be correct, would be for the Commission to adopt an additional regulation. The scope of our review, however, is only to determine whether the regulations actually adopted are valid.

■ 22. Finally, the miners contend that Regulation 6.2.D.14 requires applicants to pay for the work of experts hired by the Commission in circumstances that are not authorized by the Act. The sole provision of the Act authorizing the Commission to require an applicant to pay for the work of an expert hired by the Commission is Section 69–36–9(G). We agree with the miners that the Commission's rules might be interpreted to give the Director more authority in this regard than is authorized by the Act. In this appeal, however, we can invalidate only those regulations that are invalid on their face. If the Commission may interpret the regulation in a manner that is in compliance with the Act, we must affirm the regulation, leaving to a future time any challenge to the regulation as applied. Meanwhile, for purposes of this appeal, we will presume that the rule will not be interpreted in a manner contrary to the Act.

## D. Due Process

23. The miners contend that the regulations violate due process because they are impermissibly vague and delegate an unguided discretion to the Director. Their unguided-delegation argument can be addressed as part of their vagueness claim.

24. The United States Supreme Court has identified two concerns that can lead to invalidation of a law as unconstitutionally vague:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy mat-

ters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted).

■■■ 25. When evaluating whether an administrative regulation is unconstitutionally vague, this Court applies the same legal principles as it does when evaluating the vagueness of a statute. *Bokum Resources Corp. v. New Mexico Water Quality Control Comm'n,* 93 N.M. 546, 549, 603 P.2d 285, 288 (1979). "A regulation is unconstitutional if it is so vague that persons of common intelligence must guess at its meaning and would differ in its application." *City of Albuquerque v. Sanchez,* 113 N.M. 721, 727, 832 P.2d 412, 418 (Ct.App.1992).

26. The miners argue that, because various terms within the regulations (apart from Regulation 2) are not defined in either the Act or the regulations, "the Commission has abrogated its responsibility to establish definite and predictable guidelines for the regulation of the mining industry and has, instead, delegated uncontrolled discretion to the Director." We disagree.

27. As this Court recognized in *Climax,* a case involving an appeal from the Environmental Improvement Board's adoption of liquid waste disposal regulations:

In this field [of environmental protection] it has long been recognized that it is impossible to anticipate every factual situation that might arise under a given set of regulations. Further, it is important on the record before us to remember that we are dealing with regulations, legislative justification for which is found in such broadly applied terms as public interest, social well-being, environmental degradation, and the like. That it is within the power of the legislature to enact legislation for these purposes is well settled. *In order to give effect to these broad legislative concerns, however, it is necessary that the standards developed by the administrative agency be somewhat general. Indeed, administrative regulations of this kind are required to hold the difficult line between*

*overbreadth or vagueness on the one hand and inflexibility and unworkable restriction on the other.*

. . . .

"It is also well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action, but on the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare." Also, *"[i]t is not necessary that a regulation be drafted with absolute precision, only that it can be construed using known, accepted rules of construction." We do not require absolute or mathematical certainty. The policy behind this standard is obvious. "the standards regulating municipal solid waste disposal are doubtless difficult to devise, but if such controls are to be effective, they, of necessity, must be broad and somewhat flexible. If controls are too precise, they will provide easy escape for those who wish to circumvent the law."*

*Climax Chemical Co. v. New Mexico Environmental Improvement Board,* 106 N.M. 14, 18, 738 P.2d 132, 136 (1987) (citations omitted) (emphasis added).

28. The vesting of discretion in a public official is an important aspect of most regulatory schemes. "Discretionary power is indispensable whenever individualizing is needed. [Regulations] without discretion cannot satisfy the need for tailoring results to unique facts and circumstances of particular cases. The judicial process as well as the administrative process often allows discretion in order to take care of the need for individualized justice." 2 Kenneth C. Davis, *Administrative Law Treatise* § 8:3, at 165 (2d ed. 1979). "Agencies and individuals with important responsibilities must have considerable discretion in order to fulfill their responsibilities effectively. Inadequate discretion probably is a larger problem than excessive discretion." 3 Kenneth C. Davis & Richard J.

Pierce, Jr., *Administrative Law Treatise* § 17.1, at 98 (3rd ed. 1994).

■ 29. Here, the New Mexico Legislature and the Commission established a new regulatory program to cover all sizes, types, and locations of hard rock mining activities. The legislative purpose behind the Act was to promote the "responsible utilization and reclamation of lands affected by exploration, mining or the extraction of minerals that are vital to the welfare of New Mexico." Section 69–36–2. To breathe life into the Act, we believe it was necessary for the Commission to develop standards that were somewhat general while avoiding the constitutionally prohibited area of vagueness. Only by granting certain discretion to the Director to administer and enforce the regulations could the Act be effectively implemented. In this regard, we believe that the regulations are not so vague as to vest excessive discretion in the Director.

30. Turning to the specific provisions in the regulations of which the miners complain, the miners' brief in chief simply quotes portions of 42 regulations, underlining some words, and then asserts its conclusion that the regulations give the Director "unguided and uncontrolled discretion." We make the following observations.

31. The extent to which imprecision in the language of a law is constitutionally permissible depends on the context. The United States Supreme Court explained this principle as follows:

The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (footnotes omitted).

■ 32. In this light, we consider of particular interest that eighteen of the challenged provisions appear in Regulation 6.2. The regulation states what the Director can require in a permit application. To the extent that the Regulation is unclear, an applicant suffers no criminal or civil penalty for guessing incorrectly. If the application fails to include information that the Director requires under Regulation 6.2, the application will not be accepted. In such a case, the applicant would be required to provide the requested information or challenge the Director's interpretation of the Regulation by appealing to the Commission. The only language in Regulation 6.2 that the miners underline in their brief is in Regulation 6.2.13(F). We quote the Regulation and emphasize the words underlined by the miners: The rule requires the application to contain baseline data, including:

A description of the ore body in the proposed permit area, including geologic plans and cross-sections depicting the nature and depth of overburden, mineralized zone or ore body, aquifers and springs. A description of the potential for geochemical alteration of overburden, ore body and other materials present within the permit area. Detailed analyses *may* be required if the substrata is *suspected* to contain substances that are *likely* to create acid drainage or *might* degrade surface water or ground water or hinder reclamation.

We determine that this provision is valid. It does not confer whimsical discretion upon the Director. If there is a substantial basis to fear that substances in the substrata could create acid drainage or might degrade surface water or ground water or hinder reclamation, then the Director is authorized to demand further analysis to allay that fear. Granting such authority to the Director—when one weighs the need for such discretion against the potential for abuse of an applicant—does not *on its face* create such unfairness as to deny due process. *See Granite City Div. of Nat'l Steel Co. v. Illinois Pollution Control Bd.*, 155 Ill.2d 149, 184 Ill.Dec. 402, 408, 613 N.E.2d 719, 725 (1993). We likewise see no vagueness infirmities with the other provisions of Regulation 6.2. *See Climax*, 106 N.M. at 16, 738 P.2d at 134.

■ 33. Other challenges by the miners relate to substantive provisions, whose violations could lead to the imposition of civil or even criminal sanctions against a miner. Yet, those provisions also survive scrutiny. We hold that such requirements as "minimizing" future environmental effects, conducting operations so as not to cause "material" damage, monitoring drainage "appropriately," etc. are acceptable in this context. *See People v. Kiser*, 112 Cal.App.2d Supp. 903, 245 P.2d 1125 (1952) (minimize); *Crescent Invs. Co. v. Commissioner of Banking & Ins.*, 103 N.J.Super. 11, 246 A.2d 493, 496 (N.J.Ch. 1968) (material); *Montgomery v. Daniels*, 38 N.Y.2d 41, 378 N.Y.S.2d 1, 6, 340 N.E.2d 444, 447 (1975) (significant). No criminal penalty can be imposed unless violation of the regulation is knowing and willful. Section 69–36–18(A).

■ 34. Additionally, the Act provides for both administrative and judicial review of actions of the Director. *See* § 69–36–15(A) (administrative review by the Commission); § 69–36–16 (judicial review). An important aspect of gauging the delegation of discretion is whether the discretion is reviewable. When the ultimate decision "does not rest with the delegate, the delegation is permissible." *Kerr–McGee Nuclear Corp. v. New Mexico Water Quality Control Comm'n*, 98 N.M. 240, 246–47, 647 P.2d 873, 879–80 (Ct. App.) (citing *National Labor Relations Bd.*

*v. Duval Jewelry Co.*, 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958)), *cert. quashed*, 98 N.M. 336, 648 P.2d 794 (1982). Under the Act, "[a]ny order, penalty assessment or issuance or denial of a permit by the [D]irector pursuant to the [Act]" may be brought to the Commission for review. Section 69–36–15(A). The Commission must hold a hearing where evidence must be presented. *See* § 69–36–15(B), (C). Any decision of the Commission is then subject to judicial review by either this Court or the district court. *See* § 69–36–16; § 69–36–17. We therefore conclude that the Director is not vested with "unguided" or "uncontrolled" discretion.

**E. Separation of Powers**

35. The miners contend that the regulations represent an unconstitutional delegation of authority in violation of Article III, Section 1 of the New Mexico Constitution. Specifically, the miners argue that the regulations vest arbitrary discretion in the Director to enforce the Act and the regulations. Once again, we disagree.

36. Article III, Section 1 states:

The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

This provision provides for the division of government into three distinct branches—the legislative, executive, and judicial branches—each responsible for performing a different function. The separation of powers provision is Article III, Section 1, generally bars one branch of government from performing a function reserved for another branch of government. *See State ex rel. Clark v. Johnson*, 120 N.M. 562, 573, 904 P.2d 11, 22 (1995).

■ 37. Here, the regulations were enacted by the Commission, an executive branch agency. The regulations grant power to the Director, who is in all respects an employee of the Commission. Thus, we have

a situation in which an executive branch agency is delegating power to an executive agency employee. For there to be a violation of Article III, Section 1, there must be an encroachment by one of the three branches of government into the powers or functions of another branch of government. We conclude that Article III, Section 1 was not violated by the grant of power from an executive branch agency to an employee of the same executive branch agency. Because we have no jurisdiction to consider the question in this appeal, we do not decide whether there was an unconstitutional delegation of authority from the legislature to the Commission.

### F. Article VIII, Section 9 of the New Mexico Constitution

38. The miners argue that the regulations and the Act violate Article VIII, Section 9 of the New Mexico Constitution because they permit the imposition of fees and costs by a nonelective body. Article VIII, Section 9 states:

No tax or assessment of any kind shall be levied by any *political subdivision* whose enabling legislation does not provide for an elected governing authority. This section does not prohibit the levying or collection of a tax or special assessment by an initial appointed governing authority where the appointed governing authority will be replaced by an elected one within six years of the date the appointed authority takes office.

(Emphasis added.) Thus, Article VIII, Section 9 applies only when taxes or assessments are assessed by political subdivisions of the state.

39. The miners contend that "[t]here is no question that the Commission is a political subdivision of the State." We disagree. In general, a political subdivision is an entity "formed or maintained for the more effectual or convenient exercise of political power within certain boundaries or localities, to whom the electors residing [within said boundaries] are, to some extent, granted power to locally self-govern themselves." *Gibbany v. Ford,* 29 N.M. 621, 626, 225 P. 577, 579 (1924). *See McClanahan v. Cochise College,* 25 Ariz.App. 13, 16, 540 P.2d 744, 747 (1975). The Commission does not satisfy that definition. The miners cite no authority to the contrary. We therefore assume that counsel for the miners, after diligent search, was unable to find any authority to support its contention. *In re Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

### G. Article IV, Section 30 of the New Mexico Constitution

40. The Act establishes two funds within the state treasury—the "mining act fund" and the "inactive or abandoned non-coal mine reclamation fund"—and specifies that funds from permit applications, penalties, and other designated sources are credited to one fund or the other. (*See* § 69–36–19).[1] Money in

---

1. Section 69–36–19 states:

A. There is created within the state treasury the "mining act fund[."] All money received by the state from permit applicants, permit holders, the federal government, other state agencies or legislative appropriations shall be delivered to the state treasurer and deposited in the fund. Disbursements from the fund shall be made upon warrants drawn by the secretary of finance and administration pursuant to vouchers signed by the secretary of energy, minerals and natural resources. Money in the fund is appropriated to the energy, minerals and natural resources department to carry out the purposes of the New Mexico Mining Act [69–36–1 to 69–36–20 NMSA 1978]. Any unexpended or unencumbered balance remaining in the mining act fund at the end of a fiscal year shall not revert to the general fund but shall remain and accrue to the benefit of the mining act fund.

B. There is created within the state treasury the "inactive or abandoned non-coal mine reclamation fund[."] All money received from administrative or court-imposed penalties shall be delivered to the state treasurer and deposited in the fund. Disbursements from the fund shall be made upon warrants drawn by the secretary of finance and administration pursuant to vouchers signed by the secretary of energy, minerals and natural resources. Money in the fund is appropriated to the energy, minerals and natural resources department to conduct reclamation activities on abandoned or inactive non-coal mining areas. Any unexpended or unencumbered balance remaining in the inactive or abandoned non-coal mine reclamation fund at the end of a fiscal year shall not revert to the general fund but shall remain and accrue to the benefit of the inactive or abandoned non-coal mine reclamation fund.

the "mining act fund" is appropriated to the energy, minerals and natural resources department to carry out the purposes of the Act. Section 69–36–19(A). Money in the "inactive or abandoned non-coal mine reclamation fund" is appropriated to the energy, minerals and natural resources department to conduct reclamation activities on abandoned or inactive non-coal mining areas. Section 69–36–19(B).

41. Article IV, Section 30 of the New Mexico Constitution provides, in part, that "money shall be paid out of the treasury only upon appropriations made by the legislature. . . . Every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied." The miners contend that the "financing mechanism embodied in the Act and the regulations" violates Article IV, Section 30. Yet, their briefs do not cite to any specific regulation; in particular, the briefs do not contend that any regulation provides for payments or appropriations of money out of the state treasury. Thus, the miners' argument under Article IV, Section 30 is really only an attack on the Act itself, not the regulations. As discussed in Section I.A.2 of this opinion, this Court is without jurisdiction to review this issue under the posture presented to us in this appeal.

## H. Definition of "Mining" and Equal Protection

42. The miners challenge the constitutionality of the regulations on equal protection grounds,[2] arguing that the regulations classify mining operations into different categories.

"[M]ining" means the process of obtaining useful minerals from the earth's crust or from previously disposed or abandoned mining wastes, including exploration, open-cut mining and surface operation, the disposal of refuse from underground and in situ mining, mineral transportation, concentrating, milling, evaporation, leaching and other processing. "Mining" does not mean the exploration and extraction of potash, sand, gravel, caliche, borrow dirt and quarry rock used as aggregate in construction, the exploration and extraction of natural petroleum in a liquid or gaseous state by means of wells or pipes, the development or extraction of coal, the extraction of geothermal resources, smelting, refining, cleaning, preparation, transportation or other off-site operations not conducted on permit areas or the extraction, processing or disposal of commodities, byproduct materials or wastes or other activities regulated by the federal nuclear regulatory commission.

Section 69–36–3(H); Regulation 1.1. The miners contend that this definition creates two classifications—the mining activities enumerated in the definition and those mining operations expressly excluded from the definition—and that "[t]here is simply no reasonable, rational basis for the distinction between the mining activities regulated by the Act and [the r]egulations and mining activities which are exempt." We again disagree.

43. There is a strong presumption supporting the constitutionality of a statute or an administrative regulation. *See Tenneco Oil Co.*, 107 N.M. at 473, 760 P.2d at 165; *cf. Massachusetts Nurses Ass'n v. Board of Registration in Nursing*, 18 Mass. App.Ct. 380, 465 N.E.2d 1238, 1244 n. 19 (1984) (administrative regulation tested by same standards applied to statutes); *Bokum Resources Corp.*, 93 N.M. at 549, 603 P.2d at 288 (same). Thus, the party asserting its unconstitutionality bears the burden of overcoming the presumption of constitutionality. *Tenneco Oil Co.*, 107 N.M. at 473, 760 P.2d at 165. In construing a regulation or statute, this Court has a duty to affirm the legislation's validity and constitutionality if reason-

---

2. Although they did not specify whether they are involving state or federal constitutional grounds, we assume the miners are challenging the regulations under the Equal Protection Clauses of both the United States Constitution and the New Mexico Constitution. *See* U.S. Const. amend. XIV, § 1; N.M. Const. art. II, § 18. The standards for violation of the Equal Protection Clauses under both constitutions is similar. *Vandolsen v. Constructors, Inc.*, 101 N.M. 109, 111–12, 678 P.2d 1184, 1186–87 (Ct.App.), *cert. denied*, 101 N.M. 77, 678 P.2d 705 (1984); *Anaconda Co. v. Property Tax Dep't*, 94 N.M. 202, 210, 608 P.2d 514, 522 (Ct.App.1979), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980).

ably possible. *Cf. Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988); *Aetna Fin. Co. v. Gutierrez,* 96 N.M. 538, 541, 632 P.2d 1176, 1179 (1981); *Kaiser Steel Corp. v. Revenue Div., Taxation & Revenue Dep't,* 96 N.M. 117, 124, 628 P.2d 687, 694 (Ct.App.), *cert. denied,* 96 N.M. 116, 628 P.2d 686, (1981); *Wylie Bros.,* 80 N.M. at 638, 459 P.2d at 164. If the legislation's construction is doubtful, we must resolve all doubts in favor of its validity. *Cf. Richardson,* 107 N.M. at 693, 763 P.2d at 1158; *Kaiser Steel Corp.,* 96 N.M. at 124, 628 P.2d at 694. Here, the miners have not overcome the presumption that the regulations are constitutional.

■■■ 44. The constitutional right to equal protection of the law guarantees that the State must treat similarly situated persons in a similar manner. *See In re Castellano,* 119 N.M. 140, 145, 889 P.2d 175, 180 (1995); *Pedrazza v. Sid Fleming Contractor, Inc.,* 94 N.M. 59, 62, 607 P.2d 597, 600 (1980). The State retains the power to classify and draw lines that treat different classes of persons differently. *Martinez v. State,* 108 N.M. 382, 383, 772 P.2d 1305, 1306 (1989). The State may not, however, exercise its power to classify arbitrarily.

■■■ 45. Because it is clear that the regulations at issue in this appeal affect neither a fundamental right nor a suspect class, we apply the rational basis test to review the regulations' validity. *See Richardson,* 107 N.M. at 693, 763 P.2d at 1158 (stating that minimum scrutiny and rational basis test applied when reviewing social and economic legislation). Under that test, the statutory classification is constitutional if it bears a rational basis to a legitimate state interest. The plaintiff bears the burden of showing that the challenged legislation is "clearly arbitrary and unreasonable." *Id.* Equal protection does not prohibit rationally-based legislative classifications. *Martinez,* 108 N.M. at 383, 772 P.2d at 1306. "Only when a statutory classification is so devoid of rational support or serves no valid governmental interest, so that it amounts to mere caprice, will it be struck down under the rational basis test." *Richardson,* 107 N.M. at 693, 763 P.2d at 1158.

■■■ 46. Applying this standard, we hold that the definition of "mining" as used in Regulation 1.1, does not violate the guarantees of equal protection. First, the miners have not met their burden of demonstrating that the different classifications created by the definition of mining are "arbitrary and unreasonable" or amount to "mere caprice." The miners have simply argued that the definition of mining creates different classifications and that there is no "reasonable, rational basis for the distinction" between mining operations. The miners have therefore failed to make a prima facie showing that the classifications created by the definition of mining are devoid of rational support or serve no valid governmental interest.

47. Additionally, the record demonstrates a rational basis for the classifications created by the definition of mining. The Act covers mining of hard rock minerals. Although the Act itself does not elaborate on the legislature's reasons for exempting certain mining operations from its requirements, good reasons appear to exist for doing so. Most of the operations exempted from the definition of mining are covered by other federal and state legislative schemes. *See, e.g.,* NMSA 1978, §§ 70–2–1 to –38 (Repl.Pamp.1995) (oil and gas); NMSA 1978, §§ 69–25A–1 to –36 (Repl.Pamp.1979 & Cum.Supp.1993) (surface mining); NMSA 1978, §§ 71–5–1 to –24 (Repl.Pamp.1981 & Cum.Supp.1989) (geothermal resources); 42 U.S.C. §§ 2011 to 2296b–7 (1988) (atomic energy). We may therefore presume that the legislature and the Commission concluded not to duplicate legislation in these areas and therefore excluded these types of mining operations from the Act and the regulations.

48. Also, the legislature could have determined there was not substantial evidence that "the exploration and extraction of potash, sand, gravel, caliche, borrow dirt and quarry rock used as aggregate in construction" created significant environmental hazards and thus, need not come under the Act. Nothing in the record suggests that such mining causes significant environmental hazards. Thus, the rational basis test is satis-

fied. *See Aetna Fin. Co.*, 96 N.M. at 541, 632 P.2d at 1179.

49. The miners have failed to establish that the Commission, in enacting its definition of "mining," has transgressed constitutional boundaries. We therefore hold that the classifications created by the definition of mining do not violate the dictates of equal protection.

### I. "Rough Proportionality" Requirement

50. As their final argument, the miners contend that the regulations violate the "rough proportionality" requirement recently enunciated by the United States Supreme Court in *Dolan*, because of the "burdens placed on the development of mineral property in New Mexico by the loose fee structure adopted in the [r]egulations." The miners argue that the fee structure fails because it is indefinite and because mining operations with very different impacts are potentially subject to the same fee. Because we have already found the fee structure to be invalid, we need not address this argument.

### II. CONCLUSION

51. The brief filed by *amici curiae* was of assistance to the Court in resolving the issues presented on appeal. We hold that the provisions of Regulation 2 that do not set a determinate fee are invalid. In all other respects, we reject the miners' attacks on the Commission's regulations. We affirm in part and reverse and remand in part. The parties shall bear their respective costs on appeal.

52. **IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.